```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION


REGINALD L. STAPLES, Sr.      :
                              :
          Plaintiff,          :    NO:  1:13-CV-00311
                              :
     v.                       :
                              :    OPINION AND ORDER
CITY OF CINCINNATI,           :
                              :
          Defendant.          :
```

This matter is before the Court on Defendant City of Cincinnati's Motion to Dismiss (doc. 5), and Plaintiff's Response in Opposition (doc. 9). For the reasons indicated herein, the Court GRANTS in part and DENIES in part Defendant's motion.

**I. Background**

The following facts are taken from Plaintiff's Complaint, which for purposes of the Court's consideration of the instant motion to dismiss, are considered true: Plaintiff, an African-American started his career as a police officer with Defendant Cincinnati in 1994 (doc. 2). He served in various capacities over the years and in 2007 was appointed an Equal Employment Opportunity ("EEO") Counselor for the City (Id.). In such role Plaintiff investigated allegations of violations of Title VII within the police department (Id.). Plaintiff alleges his Caucasion supervisors were not supportive of his role as EEO Counselor (Id.). In 2008 Plaintiff filed an EEOC Charge against the department, alleging retaliation against him for his role as EEO investigator

and for disparate treatment (Id.).  That same year Plaintiff began to suffer health problems and was temporarily placed on light duty at a desk of the parks unit of the police department (Id.).

On May 28, 2009, Plaintiff requested an ADA accommodation in the form of a position as a 911 operator (Id.).  Plaintiff alleges he was suffering from a number of conditions, including hyperlipidemia and diabetes, which required him to have a clean work environment to inject prescribed medications (Id.). Plaintiff alleges that as of 2009, the police department had a long history of accommodating police officers with ADA conditions to 911-operator positions (Id.).

Plaintiff indicates that he was informed in June 2009 that no positions were available (Id.).  Plaintiff continued to seek a 911-operator position until February 2010 (Id.).  Plaintiff alleges that during such time period there was a position open for a 911 operator (Id.).

Plaintiff alleges that on February 5, 2010, the Caucasion management of the police department was opposing Plaintiff's accommodation to a 911-position, while the City ADA Coordinator Brenda Dixon recommended that Plaintiff be granted such position (Id.).  On February 10, Plaintiff alleges he was finally offered a position, but contingent upon an interview with a seven-person panel, completion of a ten week keyboarding class, and a typing test (Id.).  Plaintiff contends due to his health problems it took

2

some time for him to complete and pass the typing test, but he continued to argue he was being treated differently because his request was taking longer and there were more requirements placed upon him than similarly-situated Caucasion officers (Id.).

In September of 2010, Plaintiff alleges he was notified he would be re-assigned to the Impound Unit (Id.).  According to Plaintiff, such an assignment was commonly given as punishment to officers who had committed some dereliction of duty (Id.).  On October 25, 2010, Plaintiff wrote the City Manager Milton Dohoney complaining that he was not accommodated in the same manner as Caucasion officers (Id.).  Plaintiff alleges that three Caucasion officers were assigned as 911 operators in a very short amount of time, were not subjected to panel review, nor had to complete a typing class and test (Id.).  Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission alleging he was being discriminated against due to a disability (Id.)

The City Manager responded to Plaintiff on February 18, 2011, that Plaintiff was required to test due to new requirements put in place effective March 10, 2010 (Id.).  Plaintiff alleges that his request for an accommodation pre-dated such effective date, his accommodation was delayed because of his still-pending EEOC charge, and he believed the only way to receive the accommodation was to dismiss his charge of disability discrimination (Id.).  He dismissed it (Id.).

3

By January 2011 Plaintiff had successfully completed the keyboarding class, panel interview, and typing test (Id.). Plaintiff was offered the position of 911 dispatcher in March of 2011, contingent on completion of training (Id.). In April 2011 Plaintiff started the six-week training to become an assistant operator and dispatcher (Id.). Plaintiff alleges he performed satisfactorily and he was told he had successfully completed the class (Id.). Plaintiff even celebrated with the instructor and other class members at Red Lobster (Id.).

The following Monday Plaintiff alleges he showed up for work and was told he was not allowed to touch any equipment (Id.). By Wednesday the manager of 911 operators, Joel Estes, told Plaintiff that Plaintiff was not going to be an operator (Id.). According to Defendant Plaintiff had not passed the written test (doc. 5). Plaintiff alleges he was not offered an extended training period to have successfully completed the class (doc. 2). Plaintiff further alleges he was given no warning that he might lose his employment, on June 17, 2011, Plaintiff was informed he was terminated (Id.). Plaintiff returned to duty as a police officer on April 28, 2013, after some time receiving a disability retirement from the Ohio Police & Fire Pension Fund (doc. 5).

Plaintiff filed his Complaint May 9, 2013, alleging causes of action for 1) racial discrimination in violation of 42 U.S.C. § 1981 and Ohio Rev. Code § 4112, 2) disability

4

discrimination, 3) retaliation under state law, 4) breach of contract, 5) wrongful discharge in violation of public policy, and 6) detrimental reliance (doc. 2). Defendant has filed a motion to dismiss, contending Plaintiff has no viable claims against the City (doc. 5). Plaintiff has responded (doc. 9) such that this matter is ripe for the Court's review.

**II. Motion to Dismiss Standard**

  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (20057). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

  A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are

5

implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint…must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller &

6

Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III. Discussion**

As an initial matter the Court notes Defendant attacks Plaintiff's race discrimination claims as if they were Title VII claims when in fact Plaintiff alleges violations of 42 U.S.C. § 1981 and Ohio Revised Code § 4112.  Defendant contends Plaintiff failed to exhaust administrative remedies, though such process is not required for the claims alleged.  Johnson v. Railway Express, 421 U.S. 454, 460 (1975), Ohio Revised Code 4112.99.

Defendant's defense on the merits appears to be that it instituted the testing requirements rule on March 10, 2010, which applied to all applicants, and so it did not discriminate or retaliate on any basis against Plaintiff (doc. 5).  Such defense ignores the simple and plausible theory brought in Plaintiff's Complaint: that Caucasion officers were never subjected to the same requirements that were put into place after Plaintiff made a

7

request to become a 911 operator. The Court is required to take Plaintiff's allegations as true and based on his Complaint it can draw the reasonable inference that Plaintiff was treated differently for unlawful reasons.

Plaintiff, having articulated no argument in defense of his contract theory (Count V), or his detrimental reliance theory (Count VII), ostensibly has abandoned such claims. Defendant contends no contract claim could be raised independently of the grievance process of the collective bargaining agreement, which covers Plaintiff's employment as a union member. Defendant further contends there is no recognizable tort for detrimental reliance. The Court finds dismissal of these claims appropriate.

Finally, Plaintiff's public policy claim (Count VI), is duplicative of the claims he seeks pursuant to statute. In Ohio, the public policy tort is unavailable where there are adequate statutory remedies. Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 773 N.E.2d 526 (Ohio 2002), Kolcun v. Nationwide Ins. Co., 2006 WL 1447299, *10 (S.D. Ohio May 24, 2006), and Stange v. Deloitte & Touche, 2006 WL 871242, *5 (S.D. Ohio April 5, 2006).

## IV. CONCLUSION

Having reviewed this matter, the Court finds that Plaintiff's claims in Counts I through IV survive Defendant's challenge. Plaintiff has raised plausible allegations for unlawful disability and race discrimination, as well as retaliation, in violation of 42 U.S.C. § 1981 and Ohio Rev. Code § 4112. However,

8

the Court finds Plaintiff's remaining claims in Counts V through VII for breach of contract, public policy, and detrimental reliance subject to dismissal.

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendant City of Cincinnati's Motion to Dismiss (doc. 5), as indicated herein.

SO ORDERED.

Dated: May 1, 2014              s/S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge

9